NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| KRISTINA NAVARRO, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 3:17-cv-4737-BRM |
| | : | |
| NANCY BERRYHILL, | : | |
| ACTING COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | OPINION |
| | : | |
| Defendant. | : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Kristina Navarro's ("Navarro") appeal from the final decision of Nancy Berryhill, the Acting Commissioner of Social Security ("Commissioner"),[1] denying her application for Social Security Disability Benefits. Having reviewed the administrative record and the submissions filed in connection with the appeal pursuant to Local Civil Rule 9.1, and having declined to hold oral argument pursuant to Federal Civil Rule 78(b), for the reasons set forth below and for good cause shown, the Commissioner's decision is **VACATED** and the matter is **REMANDED** for further proceedings consistent with this opinion.

**I.    BACKGROUND**

On November 25, 2012, Navarro filed for SSDI benefits alleging disability since February 1, 2010 (the "Onset Date"). (Tr. 350-51.) Navarro alleged disability due to: narcolepsy;

---

[1] Upon the Appeals Council's Order denying Navarro's request for a review of the Administrative Law Judge's ("ALJ") decision, the ALJ's decision became the final decision of the Commissioner. (Tr. 1.)

cataplexy; sleep apnea; arthritis; a pineal cyst in her brain; vertigo/dizziness/imbalance; migraine headaches; fibromyalgia; depression; bipolar disorder; panic attacks; minor motor seizures; concentration and memory impairments; endometriosis; weakness; numbness and tingling in her arms, hands, and legs; iron and vitamin D deficiency; frequent urination; irritable bowel syndrome ("IBS"); positive ANA, an autoimmune disorder marker; flat footedness; worn out cartilage in her right knee; and right knee and spine disorders. (Tr. 211-13; 364-67; 408-12; 415-20; 433-35; 441-61.)

On July 24, 2013, the Social Security Administration ("SSA") issued a Notice of Disapproved Claim to Navarro, informing her that her claim for SSDI benefits had been denied. (Tr. 267-71.) On September 20, 2013, Navarro filed a Request for Reconsideration of the SSA's denial of her claim for SSDI benefits. (Tr. 272.) On November 21, 2013, Navarro's Request for Reconsideration was denied. (Tr. 273-75.) On January 16, 2014, Navarro timely requested a hearing for SSDI benefits before an Administrative Law Judge ("ALJ") (Tr. 277-78), which was ultimately held on October 22, 2015 before ALJ George Yatron. (Tr. 205-40).

On December 15, 2015, ALJ Yatron issued a decision determining that Navarro was not disabled, as defined by the Social Security Act, at any time from the Onset Date through December 31, 2014, the date she was last insured, pursuant to 20 C.F.R. § 404.1520(g). (Tr. 16-26.) Specifically, the ALJ found Navarro had several severe impairments – fibromyalgia, carpal tunnel syndrome, obesity, obstructive sleep apnea, narcolepsy with cataplexy, and depressive disorder – but that her severe impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. § Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. 18-19.) The ALJ further concluded that Navarro had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a),

while rejecting her subjective complaints of symptoms secondary to her impairments as "not entirely credible." (Tr. 20-25.) Ultimately, the ALJ concluded that, considering Navarro's age, experience, and RFC, there were "jobs that existed in significant numbers in the national economy that [Navarro] could have performed." (Tr. 25.)

On January 22, 2016, Navarro timely filed a Request for Review of the ALJ's decision to the Appeals Council. (Tr. 12.) On April 28, 2017, the Appeals Council denied Navarro's Request for Review, thereby becoming the final agency decision. (Tr. 1-5.) Therefore, having exhausted her administrative remedies, Navarro appealed to this Court on June 27, 2017. (ECF No. 1.)

## II. STANDARD OF REVIEW

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive by a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). This Court must affirm an ALJ's decision if it is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). To determine whether an ALJ's decision is supported by substantial evidence, this Court must review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). However, this Court may not "weigh the evidence or substitute its conclusions for those

of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citation omitted). Accordingly, this Court may not set an ALJ's decision aside, "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citations omitted).

### III. THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

Under the Social Security Act, the Social Security Administration is authorized to pay Social Security Insurance to "disabled" persons. 42 U.S.C. § 1382(a). A person is "disabled" if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is unable to engage in substantial gainful activity when his physical or mental impairments are "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated under the Social Security Act establish a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 416 .920(a)(1). First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." *Id.* §§ 404.1520(b), 416.920(b); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); *see Bowen*, 482 U.S. at

4

146-47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id.* A claimant who does not have a severe impairment is not considered disabled. *Id.* at § 404.1520(c); *see Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. § Pt. 404, Subpt. P., App. 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See id.* at §§ 404.1520(d), 416.920(d); *see also Bowen*, 482 U.S. at 146-47 n.5. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams*, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f); *Bowen*, 482 U.S. at 141. Step four involves three sub-steps:

> (1) the ALJ must make specific findings of fact as to the claimant's [RFC]; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the [RFC] to the past relevant work to determine

> whether claimant has the level of capability needed to perform the past relevant work.

*Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000) (citations omitted). When determining RFC, "[a]n ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Hoyman v. Colvin*, 606 F. App'x 678, 679-80 (3d Cir. 2015) (quoting *Plummer*, 186 F.3d at 429). Unsupported diagnoses are not entitled to great weight. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). Moreover, an administrative law judge must provide the reason for providing more or less weight to the evidence. *See Fragnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001).

The claimant is not disabled if his RFC allows him to perform his past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). However, if the claimant's RFC prevents him from doing so, an administrative law judge proceeds to the fifth and final step of the process. *Id.* The final step requires the administrative law judge to "show [that] there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428. In doing so, "[t]he ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled." *Id.* (citation omitted). Notably, an administrative law judge typically seeks the assistance of a vocational expert at this final step. *Id.* (citation omitted).

The claimant bears the burden of proof for steps one, two, and four. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). Neither side bears the burden of proof for step three "[b]ecause step three involves a conclusive presumption based on the listings." *Id.* at 263 n.2 (citing *Bowen*,

482 U.S. at 146-47 n.5). An administrative law judge bears the burden of proof for the fifth step. *See id.* at 263.

IV. DECISION

Navarro argues the ALJ erred in failing to properly evaluate the physical and mental aspects of her impairments or develop the record as needed, the ALJ erred in failing to fully or fairly discuss Navarro's individual and combined impairments at step three of the analysis, and the ALJ erred by improperly evaluating Navarro's subjective complaints and testimony as well as the lay witness testimony and statements. (ECF No. 22 at 24-37.) Accordingly, Navarro requests a reversal of the ALJ decision and a remand to the ALJ to remediate the alleged errors. (*Id.* at 37-38.) The Commissioner counters that Navarro did not meet the Act's definition of disability during the relevant period, the ALJ properly evaluated Navarro's impairments as required by step two, substantial evidence in the record supports the ALJ's step three finding that Navarro's impairments or combination of impairments did not satisfy any listing, the ALJ gave appropriate consideration to the relevant lay witness testimony and properly evaluated Navarro's subjective complaints, and substantial evidence supports the ALJ's hypothetical question to the vocational expert ("VE"), which contained all of the credibly established limitations supported by the record. (ECF No. 27 at 12-28.) This Court addresses each of Navarro's arguments in turn.

    A. **The ALJ's Evaluation of Navarro's Physical and Mental Impairments**

Navarro contends the ALJ failed to "properly evaluate the physical and mental aspects of all of [] Navarro's impairments, or to develop the record as needed." (ECF No. 22 at 24-26.) Specifically, Navarro argues the ALJ failed to assess the effect of her migraine plus non-migraine headaches, as well as her various other documented medical conditions from which she suffers, thereby running afoul of Social Security Ruling ("SSR") 96-3p. (*Id.*) The

7

Commissioner counters that the ALJ performed a proper step two analysis as the decision considered each of the conditions Navarro referenced in determining her RFC. (ECF No. 27 at 13-15.)

At step two of the sequential evaluation process, the ALJ is required to consider whether the claimant has a severe medically determinable impairment that meets the 12-month durational requirement of the Act. 20 C.F.R. § 404.1520(a)(4)(ii). A "severe" impairment is one that significantly limits a claimant's physical or mental ability to perform basic work functions. 20 C.F.R. § 404.1520(c). SSR 96-3p provides further explanation of what is required of the ALJ, stating in pertinent part:

> [I]f [an] adjudicator finds [that the claimant's conditions or symptoms] cause a limitation or restriction having more than a minimal effect on an individual's ability to do basic work activities, the adjudicator must find that the impairment(s) is severe and proceed to the next step in the process even if the objective medical evidence would not in itself establish that the impairment(s) is severe. In addition, if, after completing development and considering all of the evidence, the adjudicator is unable to determine clearly the effect of the impairment on the individual's ability to do basic work activities, the adjudicator must continue to follow the sequential evaluation process until a determination or decision about disability can be reached.

SSR 96-3p, 1996 WL 374181, at *2 (July 2, 1996).

First, Navarro contends the ALJ erred in failing to properly weigh her "migraine plus non-migraine headaches, consistent with abnormal MRI documentation of a pineal gland cyst, with the migraine headaches occurring two to three times per month and lasting from three hours to two days each." (ECF No. 22 at 24.) However, Navarro does not specify what functional limitations she had, in the context of her employment, as a result of her migraine and non-migraine headaches. (ECF No. 22 at 24-25.) Additionally, Navarro also fails to point to any evidence in the record where she or her doctors highlighted any such limitations due to her

migraines. (*Id.*) On the contrary, Navarro's neurological examinations during the relevant period were normal (Tr. 491- 93), and she reported that when she started retaking Depakote and injectable Imitrex, her migraines were stable. (Tr. 494). Nevertheless, the ALJ considered Navarro's reported migraines before ultimately concluding that she possessed the RFC to perform sedentary work pursuant to 20 C.F.R. § 404.1567(a). (Tr. 20-21.)

Second, Navarro contends the ALJ "failed to discuss her IBS with chronic recurrent diarrhea and occasional episodes of bowel incontinence" which required her to rush to a restroom up to fifty times per day, where she was often required to remain for up to thirty-five minutes at a time. (ECF No. 22 at 25.) Navarro's argument is erroneous. The ALJ noted he conducted "[a] review of the medical evidence further reveals a history of [IBS] and gastroesophageal reflux disease" but concluded that "the record does not contain objective findings[] which would support more than a minimal limitation of her physical abilities due to these disorders during the relevant period." (Tr. 18.) Indeed, the medical evidence in the record consistently demonstrated normal bowel and soft abdomen functions throughout the relevant period. (Tr. 552; 556-57; 561-62; 566.)

Moreover, "[i]n addition to the diagnoses, [a claimant is] required to present evidence that these limitations *significantly* limited her ability to do basic work activities or impaired her capacity to cope with the mental demands of working." *Salles v. Comm'r of Social Sec.*, 229 F. App'x 140, 145 (3d Cir. 2007) (citing 20 C.F.R. §§ 404.1520(c), 404.1521(a)); *see also Ramirez v. Barnhart*, 372 F.3d 546, 551 (3d Cir. 2004). Here, Navarro has failed to proffer such evidence.

Finally, Navarro argues the ALJ "failed to discuss or evaluate [her] documented mental impairments, including bipolar disorder with mood swings, extreme fatigue with poor focus, memory and concentration" in accordance with 20 C.F.R. § 404.1520(a). (ECF No. 25.)

Navarro's argument lacks merit. The ALJ determined Navarro's fibromyalgia, CTS, obesity, sleep apnea, narcolepsy with cataplexy, and depressive disorder were all "severe" impairments pursuant to step two of the inquiry (Tr. 18), and subsequently proceeded to step three as required by the Act. (Tr. 18-26). The ALJ did not improperly decide the inquiry at step two, as Navarro seems to suggest, and accordingly, any alleged error at step two fails to merit a remand. *See Salles*, 229 F. App'x at 145.[2]

### B. The ALJ's Evaluation of Navarro's Combined Impairments (Step Three)

Next, Navarro contends the ALJ "erred in failing to fully or fairly discuss [her] individual and combined impairments at step [three] in reviewing meeting of equaling any listings including prior listing 11.03, current listings 11.02 [and] 12.04," as described by SSR 12-2p. (ECF No. 22 at 26-30.) The Commissioner counters that substantial evidence in the record supports the ALJ's step three finding that Navarro's impairments, or combination of impairments, did not satisfy any past or prior listing. (ECF No. 27 at 16-22.)

The various listings included in the C.F.R. describe impairments for each of the major body systems that are considered to be severe enough to prevent an individual from performing any gainful activity, regardless of age, education, or work experience. 20 C.F.R. § 404.1525(a); *see also Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). For a claimant to demonstrate that his or

---

[2] Navarro also contends the ALJ "failed to consider the side effects of [her] very strong medications, which she testified included hot flashes, extreme sweatiness, dizziness, upset stomach, sleepiness, headaches, poor focus, and a tingling sensation which limited her ability to function or stand." (ECF No. 22 at 25.) However, Navarro has failed to provide any evidence of such conditions outside of her own conclusory testimony, which is insufficient to undermine the ALJ's decision and warrant a reversal and remand at this step. *See Grandillo v. Barnhart*, 105 F. App'x 415, 419 (3d Cir. 2004) (holding that where a claimant has "not cited to any medical evidence demonstrating that she suffered adverse side effects from her medication . . . her own conclusory statements [do] not establish a sufficient ongoing struggle with any side-effects to undermine the ALJ's determination").

her impairment matches a listing, "it must meet *all* of the specified medical criteria." *Sullivan*, 493 U.S. at 530; *see also* 20 C.F.R. § 404.1525(c)(3). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan*, 493 U.S. at 530 (citing SSR 83-19, 1983 WL 31248 (Jan. 1, 1983)). In analyzing whether a claimant's impairments equal a listing, an ALJ need not use "magic words," but must provide a discussion of the evidence that allows for "meaningful judicial review." *Holley v. Colvin*, 975 F. Supp. 2d 467, 481-82 (D.N.J. 2013) (citing *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)).

First, Navarro contends her combined impairments equal former listing 11.03, which relates to non-convulsive epilepsy, and that the ALJ erroneously concluded that no treating source made any such finding. (ECF No. 22 at 26-28.)[3] Navarro submitted a detailed letter, dated September 12, 2013, from her pulmonologist and sleep disorder specialist, Dr. Jason Shatkin, in which Dr. Shatkin noted that he had been treating Navarro since October 2012 for, *inter alia*, narcolepsy with cataplexy, chronic fatigue, and sleep apnea. (Tr. 667-68.) Ultimately, Dr. Shatkin concluded:

> Narcolepsy is a life-long, chronic, life-threatening disorder. There is no cure for Narcolepsy and in fact symptoms such as Cataplexy and short-term memory [loss] can worsen over time. Treatment for Narcolepsy include[s] naps during the day, daytime medications such as Provigil and nighttime medication such as Xyrem, both of which [] Navarro is already on a higher than normal dose.
>
> It is my professional opinion that [] Navarro lacks residual functional capacity to the extent in which she is unable to work. She is incapable of substantial, gainful activity. The demands of

---

[3] Navarro also argues that her combined impairments equal current listing 11.02, which replaced the now repealed listing 11.03. (ECF No. 22 at 28.) On July 1, 2016, the SSA removed listing 11.03 and expanded listing 11.02 to include all seizure disorders. *See* Rules and Regulations, Social Security Administration, 81 F.R. 43048-01, 2016 WL 3551949 (July 1, 2016). This rule took effect on September 29, 2016. *Id.* The ALJ issued his decision on December 15, 2015. (Tr. 16-26.) Accordingly, the ALJ could not have considered the update in the rules, and this Court will perform its step three analysis using then listing 11.03.

11

> any job, especially those of her prior line of work of paralegal, would seriously exacerbate her illness. In addition, [Navarro]'s extreme case of Narcolepsy is equivalent to that of Non-Convulsive Epilepsy as described in listing 11.03 in the bluebook of the Social Security Administration's Listing of Impairments.

(Tr. 670.)

The ALJ concluded "[n]o treating or examining physician mentioned findings that met the severity of the criteria of any listed impairment, nor did the evidence show medical findings that were the same or equivalent to those of any listed impairment of the Listings of Impairments." (Tr. 19.) In later dismissing Dr. Shatkin's opinion, the ALJ stated that Dr. Shatkin's opinion should be granted "limited" weight "as it is inconsistent with the record as a whole." (Tr. 24.) The ALJ does not explain in what ways this opinion conflicts with the evidence in the record as a whole. On the contrary, Navarro submitted a report from Dr. Nader Mahmood, a second treating pulmonologist, in which Dr. Mahmood concurred with Dr. Shatkin's conclusions. (Tr. 742-788.) Ultimately, after citing his own extensive examinations and observations, Dr. Mahmood stated:

> I saw [Navarro] on two separate occasions . . . for narcolepsy with cataplexy, obstructive sleep apnea, fibromyalgia and obesity. I did review the report from Dr. Jason Shatkin and I agree with his findings and opinion. I feel the patient is eligible for social security disability.

(Tr. 780.)

An ALJ must afford great weight to opinions from a treating medical expert when such opinions are supported by substantial evidence in the records. *See* 20 C.F.R. § 404.1527(c). Here, the ALJ provided very "limited weight" to the conclusion of Dr. Shatkin and "no weight" to that of Dr. Mahmood, despite the support each opinion lends to the opinion of the other and each opinion's respective reliance on direct examinations and observations of Navarro, merely

claiming that the two opinions are unsupported by the record. (Tr. 20-25.) Instead, the ALJ relies on the conclusions of Dr. Nikolaos Galakos and Dr. Mary Ann Nicastro, medical consultants for the State agency, who found that Navarro has some, albeit limited, RFC. (Tr. 20-25; 241-66.) The ALJ justifies his reliance on the latter opinions and rejections of the former by maintaining that those opinions "are well-supported by the medical evidence and consistent with the record as a whole." (Tr. 24.) The ALJ fails to specify with which medical evidence these medical opinions are consistent, as well as how they are supported with the record as a whole, as they clearly contradict the well-supported opinions of Dr. Shatkin and Dr. Mahmood.

This Court finds the ALJ erred in dismissing the reports of Drs. Shatkin and Mahmood. First, Drs. Shatkin and Mahmood each treated Navarro for months, whereas Drs. Galakos and Nicastro each saw Navarro only once and relied primarily on reports rather than their own examinations and observations. *See* 20 C.F.R. 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated [a claimant] and the more times you have been seen by a treating source, the more weight we will give to the medical source's opinion. When the treating source has seen [the claimant] a number of times and long enough to obtain a longitudinal picture of [the] impairment, we will give the medical source's opinion more weight than we would if it were from a nontreating source."). Second, the opinions of Drs. Shatkin and Mahmood, two well-respected specialists in their fields, were consistent with one another and the record as a whole, and each opinion was supported by far more first-hand observations and diagnostic testing than those of Drs. Galakos and Nicastro. *See* 20 C.F.R. 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particular medical signs and laboratory findings, the more weight we will give that medical opinion."); *see also* 20 C.F.R. 404.1527(c)(4) ("the more consistent a medical opinion is with the record as a whole, the more

weight we will give to that medical opinion."); *see also* 20 C.F.R. 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist."). Therefore, this Court finds that the ALJ erred in its step three analysis – with respect to its determinations concerning listing 11.03 – in providing "little weight" to the opinion of Dr. Shatkin and "no weight" to that of Dr. Mahmood. (Tr. 20-25.)[4] Accordingly, a remand to the ALJ is necessary.

Second, Navarro claims the ALJ erred in determining that she failed to meet the "paragraph B" criteria of listing 12.04. (ECF No. 22 at 29-30.) However, as this Court has found a basis for remand with respect to Navarro's argument that the ALJ erred in step three of the analysis concerning listing 11.03, it need not address Navarro's argument concerning listing 12.04, but instead remands the matter to the ALJ for further findings consistent with this opinion.

### C. The ALJ's Evaluation of Navarro's Subjective Complaints and Lay Witness Testimony and Statements and the ALJ's Step Five Analysis

Because this Court has found a basis for remand in this case, it need not address Navarro's arguments concerning the ALJ's alleged improper evaluation of her subjective complaints and lay witness testimony and the ALJ's alleged erroneous step five analysis. To the extent that any other errors may have occurred, such may be remedied on remand.

---

[4] The ALJ further justified his decision not to recognize Navarro's disability pursuant to listing 11.03 by noting "[d]espite the alleged severity of the claimant's symptoms, she has not been required to turn in her driver's license. Further, she is the full-time and primary caregiver of her two children." (Tr. 24.) However, neither revocation of a driver's license nor termination of parental rights were requirements for determining a claimant qualified for listing 11.03. *See* 20 C.F.R. § 404, Subpt. P, App'x 1, § 11.03 (reserved).

## V. CONCLUSION

For the reasons set forth above, the Commissioner's decision is **VACATED** and the matter is **REMANDED** for further proceedings consistent with this opinion.

**Date:** March 29, 2019                  */s/ Brian R. Martinotti*
                                          **HON. BRIAN R. MARTINOTTI**
                                          **UNITED STATES DISTRICT JUDGE**